UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOURK
------------------------------------------------------------------------x
CARLTON ROUSE,                                   :
                                                 :
                    Plaintiff,               :         08 CV 7419 (HB)
                                                 :         **OPINION & ORDER**
                    -against-              :
                                                 :
CITY OF NEW YORK, NEW YORK CITY                  :
DEPARTMENT OF CORRECTIONS, AND                   :
MARTIN F. HORN, COMMISSIONER                     :
                                                 :
                  Defendants.              :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       This is an employment discrimination case that, in large measure, has been previously litigated in administrative proceedings before the New York State Department of Human Rights ("SDHR"). Nevertheless, because those proceedings were not appealed to a state court, Plaintiff Carlton Rouse ("Rouse"), is entitled to reassert his claims here. However, as set forth below, the end result of his present endeavor is destined to be similar to the outcome of his previous efforts. Rouse asserts against his employer, the New York City Department of Corrections ("DOC") and the City of New York and the Commissioner of the DOC, Martin Horn (collectively, "Defendants") claims of (1) racial, marital-status and age discrimination under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. §1983 ("Section 1983"), the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law  290, *et seq*. ("SHRL") and the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.* ("CHRL"); (2) retaliation in violation of Title VII, Sections 1981 and 1983; (3) violations of the Privacy Act of 1974, 5 U.S.C. §§552a (the "Privacy Act"); (4) violations of New York's "whistle-blower" statute, New York Labor Law § 740; and (5) a common law tort claim for intentional infliction of emotional distress ("IIED"). Defendants move for summary judgment on all claims pursuant to Fed. R. Civ. Pro. 56(c). For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

       Rouse is a sixty-year-old African American man who is unmarried and a veteran of the Vietnam War. Decl. of Carlton Rouse, dated May 11, 2009 ("Rouse Decl.") ¶1. Rouse has

1

worked for the DOC since 1995, initially in the position of electrician's helper and, since he was promoted in August 2007, in the position of electrician. *Id.*; Defts.' 56.1 Stmt. ¶29.[1]

Central to Rouse's claims are his three unsuccessful bids to be promoted to electrician that preceded his ultimately successful attempt in August 2007. First, Rouse was one of eighteen candidates to interview for two provisional electrician positions announced in May 2005 (the "May 2005 Position"). Defts.' 56.1 Stmt. ¶¶ 10-11; Decl. of Courtney Stein, dated March 23, 2009 ("Stein Decl."), Ex. G. Ronald Bixby, Rouse's supervisor at DOC and the one who conducted the interviews, testified that at the time of his interview Rouse had taken and failed the most recent civil service examination for the position and at the interview answered correctly 2.5 out of the 5 technical questions he was asked. Decl. of Ronald Bixby, dated March 23, 2009 ("Bixby Decl."), ¶20. Rouse was not selected for the May 2005 Position, which went instead to Michael Coffey and Kevin Brown, each of whom had previously passed a civil service examination for the position of electrician. *Id.* at ¶¶ 12-13. Coffey and Brown are married, white men, and at the time of the interview Coffey had fewer years of service with DOC than did Rouse. Rouse Decl. ¶ 10.

Second, Rouse was one of sixteen candidates to interview for four provisional electrician positions with the DOC's Fire and Safety Task Force announced in October 2005 (the "October 2005 Position"). Defts' 56.1 Stmt. ¶15; Stein Decl. Ex. J. At the time Rouse had not passed the civil service examination, but at this interview he answered 3.5 out of 5 technical questions correctly. Defts.' 56.1 Stmt. ¶15. Following the interviews, Bixby recommended four candidates for the position, three of whom are white and one of whom is Hispanic: (i) Charles Dwyer, who had worked for DOC for 18 years, and answered 4 out of 5 technical questions correctly; (ii) Philip Pellegrino, who had worked for DOC for 16 years, and answered all five of the technical questions correctly; (iii) Jose Gonzalez, who had worked for DOC for 8 years and was, according to Bixby "very familiar with fire alarm systems"—a fact that Rouse disputes; and (iv) Sergey Ilin, who answered zero technical questions correctly and had worked for DOC only 14 months, but who had passed a previous civil service examination. Defts.' 56.1 Stmt. ¶17; Pls' 56.1 Stmt. ¶17; Stein Decl. Ex. J. Bixby also testified that qualitative considerations factored into his recommendation; for example, Dwyer was a "good employee, helpful, knowledgeable,"

---

[1] Where issues of fact are not controverted, citation is made to Defendants' statement of fact pursuant to Local Rule 56.1 ("Defts' 56.1 Stmt."). Where such issues are disputed, citation is made to Plaintiff's counterstatement of facts ("Pls' 56.1 Stmt.").

and Ilin was "highly regarded" and "very professional." Bixby Decl. ¶24. The four candidates recommended by Bixby were selected for the position, and Rouse was not.

Third and finally, Rouse was one of twelve candidates to interview for a single provisional electrician position in September 2006 (the "September 2006 Position). Stein Decl. Ex. M. In this interview Rouse answered 4 out of 5 technical questions correctly. *Id.* Bixby recommended Rouse and two other candidates, each white men, for the position: (i) Peter Mulligan, who answered all 5 technical questions correctly, and (ii) Arthur Dechecchi, who had been working for DOC for 16 years. Defts.' 56.1 Stmt. ¶ 21. Bixby's recommendation stated that Mulligan and Dechecchi had "professional mannerisms" but did not so state with respect to Rouse. Stein Decl. Ex. N. Mulligan was ultimately selected for the position. *Id.* at Ex. O.

Bixby recalls that during one interview Rouse offered only short, quick answers and appeared disgruntled and aloof while slouching in his chair. Bixby Decl. ¶28. In another interview Bixby recalls Rouse stating that he did not want to leave the Special Services Division ("SSD"), even though the position for which he was interviewing could have required him to do so. *Id.* Bixby's recollections are consistent with those of Gregory McLaughlin, the warden in charge of SSD during most of the relevant time period. McLaughlin testified that he recalled that during one interview Rouse became argumentative and tried to prove Bixby wrong about a technical issue. Decl. of Gregory McLaughlin, dated March 13, 2009 ("McLaughlin Decl.") ¶16. With respect to that incident, Rouse states he believes Defendants are trying to use his "passion for electrical work" against him by "paint[ing] [him] as argumentative." Rouse Decl. ¶18. In his deposition Rouse referred to one of the interviews at issue as the "one where I was grunting," and acknowledged that he was "quite irritated" and that he "lost all [his] decorum" because McLaughlin made a comment about Rouse's deceased sister that Rouse found insensitive. Transcript of Deposition of Carlton Rouse ("Rouse Tr.") at 122.

Another opening for a provisional electrician position was announced in the spring or summer of 2007, and Rouse interviewed and was selected for the position. Defts.' 56.1 Stmt. ¶26. At the time, he had taken and passed the civil service examination. *Id.* Pursuant to Rouse's provisional promotion, he was transferred away from SSD to work in the jails. Bixby testified that shortly after his transfer, Rouse's new supervisor called Bixby and stated that was having difficulties with Rouse. Bixby Decl. ¶32. Rouse acknowledges that he was disciplined and ultimately transferred back to SSD after a confrontation with a warden. Pls.' 56.1 Stmt. ¶ 28. In

September 2007, Rouse was selected for and given a permanent electrician position that he currently holds. Defts.' 56.1 Stmt. ¶ 29.

On December 5, 2005, Rouse filed a verified complaint with the New York State Division of Human Rights ("SDHR") alleging that in denying him the May 2005 Position the DOC discriminated against him on the basis of his race, marital status, national origin and age in violation of the New York State Human Rights Law, Title VII, and the ADEA. Defts.' 56.1 Stmt. ¶30. On October 27, 2006, Rouse amended his complaint to add alleged claims pertaining to the October 2005 Position. *Id.* at ¶ 31. The SDHR issued a finding of no probable cause December 29, 2006. *Id.* at ¶ 31. Thereafter, Rouse successfully applied for the case to be reopened and the SDHR issued a finding of probable cause. *Id.* at 33-35. After a hearing before an administrative law judge ("ALJ"), in June 2008, the ALJ issued an opinion finding that Rouse had not been discriminated against on the basis of race, marital status or national origin and that he had not been retaliated against. Stein Decl. Ex. Z. The ALJ did conclude that DOC had discriminated against Rouse on the basis of age because Bixby had testified at the hearing that Gonzalez was hired over Rouse for the October 2005 Position in part because he was "young, upcoming [and] energetic." *Id.* Rouse was awarded $10,000 compensatory damages for his claimed emotional distress and $19,600.00 for nine months back pay plus interest. *Id.*

On May 21, 2008 the Equal Employment Opportunity Commission ("EEOC") issued a right to sue letter to Rouse. Stein Decl. Ex. BB. Plaintiff filed a Notice of Claim on July 9, 2008, and filed the instant action on August 21, 2008.

## LEGAL STANDARD

A motion for summary judgment must be granted if the moving party shows "there is no genuine issue as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* 247-48. Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making

assertions that are conclusory or based on speculation." *Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (internal citation omitted). Rather, he "must come forward with evidence sufficient to allow a reasonable jury to find in [his] favor." *Brown*, 257 F.3d at 252; *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in [the] rule, . . . the adverse party's response . . . must set forth *specific facts* showing that there is a genuine issue for trial.") (emphasis added).

### III. DISCUSSION

#### A. Effect of SHDR Proceedings On This Action

##### 1. Election of Remedies

Pursuant to New York State Executive Law §297, Rouse is precluded from asserting his state law claims before this Court because his complaint before the SDHR was adjudicated on the merits. N.Y. Executive Law § 297(9) (McKinney 2005); *Lewis v. North General Hosp.*, 502 F.Supp.2d 390, 400 (S.D.N.Y. 2007) (citing *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000)). Section 297 affords a right of action to one who alleges unlawful discrimination, "unless such person had filed a complaint hereunder or with any local commission on human rights," and the SHDR did not dismiss the complaint "on the grounds of administrative convenience [or] untimeliness." N.Y. Exec. Law § 297(9). "When a plaintiff elects to pursue claims of discrimination through administrative proceedings before the [SDHR], § 297(9) poses an 'insuperable jurisdictional bar' to subsequently raising those same claims of discrimination in court." *Smith-Henze v. Edwin Gould Services for Children and Families, Officers and Employees*, 06 Civ. 3049 (LBS), 2006 WL 3771092, *3 (S.D.N.Y. Dec. 21, 2006) (quoting *Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 884 (2d Cir. 1995)). As a result of Rouse's election to pursue his state claims before the SDHR, Defendants' motion for summary judgment with respect to those claims is GRANTED.

##### 2. Res Judicata

The doctrines of res judicata or collateral estoppel, which generally prohibit re-litigation of the same claim, do not apply to Rouse's Title VII or ADEA claims because the ALJ's decision was not reviewed by a New York state court. "In Title VII cases, federal courts do not give preclusive effect to state agency decisions unless they have been reviewed in court." *Nestor v. Pratt & Whitney*, 466 F.3d 65, 73 (2d Cir. 2006) (citing *Univ. of Tennessee v. Elliot*, 478 U.S.

5

788 (1986)).[2] The Supreme Court extended this holding to cases brought under the ADEA in *Astoria Federal Sav. and Loan Ass'n v. Solimino,* 501 U.S. 104, 110-11 (1991). Consequently, although state administrative findings may be entered into evidence at trial should one be necessary, *see Id.* at 114, the state administrative proceedings do not foreclose Rouse's opportunity to prove his federal law claims in this Court.

### 3. Double Recovery

Defendants argue that because the SDHR issued a decision awarding Rouse back wages for his failure to promote claim and compensatory damages for emotional distress, Rouse has been made whole on those claims and may not seek to recover twice for the same injuries. Defendants are correct that a plaintiff may not recover twice for the same injury. "[I]t 'goes without saying that the courts can and should preclude double recovery by an individual.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) (quoting *General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission,* 446 U.S. 318, 333 (1980)).

However, the Supreme Court has also held that both Title VII and the ADEA "plainly assume the possibility of federal consideration after state agencies have finished theirs." *Solimino*, 501 U.S. at 111 (ADEA); *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 67 (1980) (plaintiff may recover attorneys fees under Title VII for legal work done in state proceedings even though the legal work was based upon state law and such state law did not authorize attorneys fees). Consequently, the mere *possibility* of double recovery does not mean that Rouse is precluded from asserting Title VII or ADEA claims here. Because the SDHR decision was not reviewed by a state court, not only does Rouse have "second chance to prove [his] claim" *Solimino*, 501 U.S. at 114, but he also has the opportunity to recover damages not available in state administrative or judicial proceedings. Even a plaintiff who is successful in state administrative proceedings may pursue his case in federal court "when the state remedy, or its enforcement, is thought to be inadequate." *Solimino*, 501 U.S. at 111. Double recovery can

---

[2] In *Elliot*, the Supreme Court held that with respect to claims brought under the Reconstruction-era civil rights statutes—i.e., 42 U.S.C. §§ 1981 and 1983—when a state agency acts in a judicial capacity to resolve disputed issues of fact which the parties have had an adequate opportunity to litigate, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799.

6

and must be avoided by adjustments to any jury award, but the mere possibility of double recovery does not itself eliminate triable issues of fact for the jury to consider. [3]

### 4. Timeliness of Rouse's Claims

The date that Rouse filed his complaint with SDHR affects the timeliness of his federal claims here, and those claims that arise from conduct which occurred prior to February 8, 2005—i.e. 300 days prior to his filing of a complaint with SDHR—are barred by the statute of limitations. "In states such as New York that have an agency with the authority to address charges of discriminatory employment practices, the statute of limitations for filing a charge of discrimination with the EEOC is 300 days" after the unlawful employment practice occurred. *Butts v. City of N.Y. Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir. 1993) (citing 42 U.S.C. § 2000e-5(e)), *superceded by statute on other grounds,* Civil Rights Act of 1991, Pub.L. No. 102-166, 105 Stat. 1072. Because SDHR is an agent of the EEOC pursuant to a worksharing agreement, Rouse's December 5, 2005 complaint filed with the SDHR constitutes filing a charge with the EEOC on the same day. *See, e.g.*, *Mudholkar v. University of Rochester,* 261 Fed.Appx. 320, 322-323, 2008 WL 213888, *2 (2d Cir. 2008).

Consequently, those of Rouse's claims that arise from the events that precede February 8, 2005 are time-barred. First, Defendants contend, and Rouse does not dispute, that his hostile-work-environment claim is based on a single incident that occurred in 1998, when a co-worker leveled a racial slur at him in the course of an altercation.[4] Rouse's hostile-work-environment claim is therefore barred by the statute of limitations. Second, Rouse contends that Defendants distributed overtime hours in manner that discriminated against African Americans, but

---

[3] Rouse has already recovered back-pay and emotional distress damages for his age-discrimination claim, the only claim which survives summary judgment. Under the ADEA, he will be entitled to "liquidated damages" equal to the back-pay award only if he proves that the Defendants' violation of the ADEA was willful—i.e. that DOC knew or showed reckless disregard for whether its conduct was prohibited by the ADEA. *McGinty v. State*, 193 F.3d 64, 69 (2d Cir. 1999); 29 U.S.C. §626(b). Punitive damages are not available against municipal entities under the CHRL. *Krohn v. New York Police Dept.*, 2 N.Y.3d 329 (2004).

[4] Defendants argue in their reply brief that those of Plaintiff's claims that are the subject of Defendants' arguments in its moving papers and unopposed by Plaintiff in his opposition should be deemed abandoned and dismissed. But the precedent on which Defendants rely, *Blouin ex rel. Estate of Pouliot v. Spitzer*, 356 F.3d 348, 363 (2d Cir. 2004), concerns abandonment of arguments on appeal and is thus inapposite. Although it is a "perilous path" a party opposing summary judgment need not submit *any* response to such a motion because unless the moving party's submissions demonstrate there is no material issue of fact for trial, summary judgment is improper. *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161 (1970)).

acknowledged that he has been "content" with the system of overtime distribution after it was "corrected" in 2004. Rouse Tr. at 163. To the extent based on inequitable distribution of overtime, then, Rouse's claims of racial discrimination are also time-barred. Third and finally, Rouse alleges that he was "inequitably informed" about job announcements and that, after he informed DOC of this fact he was retaliated against. Am. Compl. ¶¶ 21-22. However, the job announcement to which Rouse refers was allegedly offered, but already filled, on July 8, 2004.[5] *Id*. Accordingly, Defendant's motion for summary judgment with respect to the foregoing claims is GRANTED.

### B. **Claims Under Sections 1981 and 1983**

Rouse's claims under Sections 1981 and 1983 must be dismissed because Rouse sues municipal entities, DOC and the City of New York, and Commissioner Horn in his official capacity,[6] and he fails to demonstrate that any statutory or constitutional violations result from an official custom or policy. *See Monell v. Dep't. of Social Svcs.*, 436 U.S. 658, 694 (1978). "[W]hen the defendant sued for discrimination under § 1981 or § 1983 is a municipality—or an individual sued in his official capacity—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida, N.Y.* 375 F.3d 206, 226 (2d Cir. 2004) (internal citation omitted). Although discriminatory practices need not be codified into rules or regulations to generate municipal liability, the practices complained of must be sufficiently "persistent and widespread[,] . . . 'permanent and well settled as to constitute a custom or usage with the force of law.'" *Sorlucco v. New York City Police Dept.*, 971 F.2d 864, 870-871 (2d Cir. 1992) (quoting *Monell*, 436 U.S. at 691) (additional internal quotation marks omitted). Here, apart from his complaints about policies that led to inadequate distribution of overtime hours, which Rouse acknowledged were corrected in 2004, Rouse makes no allegations that the Defendants had a policy or custom of discriminating against

---

[5] The bulk of Rouse's allegations concern job opportunities for which Rouse interviewed in 2005 and 2006 but was not ultimately selected. Such claims undermine a contention that, after 2004, Rouse suffered injury as a consequence of an allegedly unfair system of announcing job opportunities.

[6] Rouse does not allege that Commissioner Horn was personally involved in any of the conduct about which he complains.

members of a protected class.[7] Accordingly, Defendants' motion for summary judgment with respect to Rouse's claims under Sections 1981 and 1983 is GRANTED.

### C. Discrimination Claims

I now turn to the merits of Rouse's discrimination claims under Title VII, the ADEA, and the CHRL, which all are analyzed under the burden-shifting regime articulated by the Supreme Court in *McDonnell Douglass v. Green*, 411 U.S. 792, 802-04 (1973). *See Terry v. Ashcroft,* 336 F.3d 128, 137-38 (2d Cir.2003) (ADEA); *Dawson v. Bumble & Bumble,* 398 F.3d 211, 217 (2d Cir. 2005) (NYCHRL). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination by demonstrating that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent. *Id.* at 802. After the plaintiff has satisfied this "minimal" initial burden the burden of going forward shifts to the defendant to provide a legitimate non-discriminatory reason for the adverse employment action. *Patterson*, 375 F.3d at 221. This showing must be supported by admissible evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Id.* The plaintiff then has an opportunity to demonstrate that the defendant's reasons were merely a pretext for discrimination; this is one way that a plaintiff may meet his ultimate burden to prove that it is more likely than not that discrimination was a motivating factor in the disputed employment action. *See Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir. 1999).

#### 1. Prima Facie Case: Age Discrimination

Rouse establishes a *prima facie* case of age discrimination. First, Rouse is over forty-years old, which places him within the class of persons protected by the ADEA. *See* 29 U.S.C. §631(a). Second, Rouse had substantially similar qualifications to the persons ultimately selected for the electrician positions, including more experience than at least two successful

---

[7] Rouse states generally in his declaration in opposition to the instant motion that "[o]ver the course of this time period, the Department consistently frustrated [his] attempts to work overtime," and that "overtime was usually given to non black employees." Rouse Decl. ¶33. Although it is not clear to which time period Rouse refers, to the extent that this statement can be read to assert that inequitable distribution of overtime extended past 2004 it conflicts with Rouse's deposition testimony that he was content with the system of overtime distribution after it was changed in 2004. "It is beyond cavil that 'a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that ... contradicts the affiant's previous deposition testimony." *Bickerstaff v. Vassar College*, 196 F.3d 435, 455 (2d Cir 1999) (quoting *Hayes v. New York City Dep't of Corrs.,* 84 F.3d 614, 619 (2d Cir. 1996).

candidates. Consequently, a jury could reasonably conclude that he was qualified for the position. *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004) (to make out prima facie case of discriminatory failure to promote, plaintiff must show that he meets defendant's criteria for the position). Third, denial of a promotion satisfies the requirement of an adverse employment action. *See Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006). To establish the fourth and final element of a prima facie case of age discrimination it is generally sufficient to allege that the plaintiff was replaced by or passed over for a candidate "substantially younger" than the plaintiff. *Graves v. Finch Pruyn & Co., Inc.,* 457 F.3d 181, 187 (2d Cir.2006). Here, however, neither party has offered evidence of the successful applicants' ages, although some of them, including Gonzalez, had fewer years of experience than Rouse. But "seniority is not a sufficiently accurate indicator of age" that adverse actions based on seniority can alone support an inference of age discrimination. *Cross v. New York City Transit Authority*, 417 F.3d 241, 250 (2d Cir. 2005).

Nevertheless, Bixby's admission before the ALJ that Gonzalez was hired in part because he was "young [and] energetic" is admissible in this action, *Solimino*, 501 U.S. at 114, and evidence from which a reasonable jury could infer that Rouse was denied the October 2005 Position on account of his age. Consequently, Rouse establishes a prima facie case of age discrimination under the ADEA and the CHRL. *Tomassi v. Insignia Financial Group, Inc.* 478 F.3d 111, 115 n. 3 (2d Cir. 2007) ("[A]ge-discrimination claims under the ADEA . . . and NYCHRL are analyzed under the same standard").

### 2. Prima Facie Case: Racial Discrimination

Rouse satisfies the three elements of a prima facie claim of racial discrimination that overlap with the elements of his age-discrimination claims, and thus need only show evidence that supports an inference of discriminatory intent to satisfy his initial burden with respect to his racial discrimination claims.[8] Rouse may satisfy this burden "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.

---

[8] Apart from reciting "marital status" as a basis of discrimination and offering testimony that some of the successful candidates were married while Rouse is not, Rouse asserts no meaningful opposition to Defendants' motion for summary judgment on his marital-status discrimination claim. In any event, analysis of this claim largely tracks that applicable to Rouse's racial discrimination claims, with the exception that not all of the successful candidates were married which undermines Rouse's *prima facie* case. But even if Rouse is able to establish a *prima facie* case, his marital status discrimination claims fail because he does not show that the Defendants' proffered explanations are pretextual.

2000) (citing *International Bd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15 (1977)). To raise an inference of discrimination on the basis of disparate treatment, a plaintiff must show that he was "similarly situated in all material respects" to the individuals against whom he would have the court compare him. *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir. 1997).  Of course Rouse is not required to show disparate treatment of an *identically* situated employee.  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53-54 (2d Cir. 2001).  The other employees need only "have a situation sufficiently similar to plaintiff's to support at least a minimal inference that the difference of treatment may be attributable to discrimination." *Id.*

Here, the successful applicants for the promotions that Rouse was denied—none of whom are black—are sufficiently similarly situated to Rouse to support "at least a minimal inference" that the disparate treatment may be attributable to racial discrimination. *See Id.* Although some candidates had more experience than Rouse, others such as Gonzalez and Ilin had less.  *See* Stein Decl. Ex. J.  Although some candidates answered more technical questions correctly than Rouse did, others answered fewer. *See Id.*  Rouse was thus similarly situated with the group of successful candidates in the material respect that they all met the minimum qualifications for position Rouse was denied.   Because none of successful candidates are black, a jury could reasonably infer that race was a motivating factor in the promotion decisions. Rouse thus meets his "minimal" burden to establish a *prima facie* case of racial discrimination.

### 3.  Defendants' Legitimate Non-Discriminatory Reasons for Failure to Promote

The inquiry turns next to Defendants and their proffer of non-discriminatory explanations for their employment decisions.  "The defendant's burden of production also is not a demanding one" *Fisher v. Vassar College,* 114 F.3d 1332, 1335-36 (2d Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).  Here, Defendants offer competent evidence of specific, concrete, and largely objective explanations for their decisions to select the successful candidates over Rouse.  For example, Dwyer, Pellegrino and Mulligan all answered more technical questions correctly, Gonzalez was familiar with fire alarms, and Ilin had passed the civil service examination.

When unsubstantiated and disputed, the type of qualitative factors on which Bixby based his recommendations—such as, for example, that Ilin "had very professional mannerisms"—are

11

of the type that may be insufficient to defeat a summary judgment motion.[9] *See*, *e.g.*, *Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003) (disputed and unsupported statement that plaintiff was not promoted because he was "quarrelsome" was insufficient to sustain a motion for summary judgment). But here, Defendants' qualitative assessments of the successful candidates are in each instance supported by objective and quantitative non-discriminatory explanations as to why they were qualified for the position. *See Fayson v. Kaleida Health, Inc.*, No. 00 Civ. 860, 2002 WL 31194559, *7 (W.D.N.Y. Sep. 18, 2002) (citing *Byrnie,* 243 F.3d at 104) (hiring equally qualified candidate causes discriminatory failure to promote claim to fail as a matter of law). Moreover, Defendants offer non-discriminatory explanations about why Rouse was *not* selected for the promotions: namely, his record of tardiness, his argumentative demeanor in at least one interview, and his stated preference not to leave the division to which he was currently assigned. Consequently, Defendants meet their burden of offering legitimate, non-discriminatory reasons for their hiring decisions, shifting the burden of going forward back on to Rouse to show that the proffered reasons were mere pretexts obscuring a discriminatory motive.

4.  **Pretext / Plaintiff's Ultimate Burden**

Once a defendant has met its burden of production by offering a nondiscriminatory explanation for the employment action at issue, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." *Bickerstaff*, 196 F.3d 446 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 508 (1993)). Because the ultimate burden of persuasion always lies with the plaintiff, once the defendant has rebutted the plaintiff's *prima facie* case, the plaintiff must prove that it is more likely than not that impermissible discrimination was a motivating factor in the adverse employment decision or, in the context of defeating a motion for summary judgment, that a rational finder of fact could infer such a conclusion from the admissible evidence. *See Id.*; *see also*, *Terry*, 336 F.3d at 138. The plaintiff's opportunity under the *McDonnell Douglas* framework to show that the employer's proffered explanation is false thus "merges with [his] ultimate burden to persuade the trier of fact that [he] has been the victim of intentional discrimination." *Bickerstaff*, 196 F.3d at 446. Showing that the explanation was false does not

---

[9] An employer may rely on subjective criteria to make hiring decisions, including impressions made during an interview. *Byrnie v. Town of Cromwell, Bd. of Educ.,* 243 F.3d 93, 104 (2d Cir. 2001). At the same time, an employer's explanation must be clear, specific and honest. *Id.* at 105. Otherwise, "[a]ny defendant can respond to a [discrimination charge] with a claim of some subjective preference or prerogative and, if such assertions are accepted, prevail in virtually every case." *Id.* at 104-105.

alone satisfy the plaintiff's burden of proof, but "it may (and, in most circumstances, will) advance [his] greater enterprise of showing discriminatory intent." *Id*. at 448.

On the one hand, "[a] combination of factors, any of which judged on their own would be much less compelling, [may] provide sufficient evidence to allow a reasonable jury to conclude that [the defendant's] explanation for failing to hire [the plaintiff] was a pretext for impermissible discrimination." *Byrnie*, 243 F.3d at 102.  On the other, courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff*, 196 F.3d at 448.

       a.    Racial Discrimination

Here, even when considered as a whole, the evidence set out by Rouse is insufficient to create a genuine issue of fact for trial as to whether racial discrimination was a motivating factor in Defendants' hiring decisions.  First, neither Rouse's conclusory statements that he believes he was denied the promotions on the basis of discrimination nor his beliefs that he was a qualified or even superior candidate are sufficient to create a genuine issue of fact for trial.  *See Major League Baseball*, 542 F.3d 310 (conclusory assertions by party opposing summary judgment insufficient to show the existence of a genuine issue of fact); *Dawson*, 398 F.3d 224 (plaintiff's subjective assessment of chances for promotion does not create issue of fact as to whether failure to promote was motivated by discriminatory intent).

Second, Rouse does not establish that the non-discriminatory reasons for Defendants' hiring decisions were false and in some instances his evidence corroborates those explanations.  Rouse argues that the Defendants' reliance on his attendance record was pretexual but does not rebut the factual accuracy of the document from his personnel file that states he had 15 "latenesses" between March 2005 and May 2006, or that successful candidates Mulligan, Dwyer, and Coffey had none.  Stein Decl. Exs. B, NN.  Rather, Rouse offers explanations for his tardiness, including the Defendants' failure to provide shuttle service to Riker's Island and Rouse's need to care for his ailing sister.  Rouse Decl. ¶ 31.  But Rouse's deposition testimony confirms that in at least one interview the issue of his tardiness was raised and that he lost his composure when McLaughlin suggested that he would no longer be late because his sister had passed away.  Rouse Tr. at 121.  However insensitive McLaughlin's remark, Rouse's testimony shows that Rouse's punctuality was an issue during his interview.  The balance of the evidence

Rouse supplies includes annual performance reviews that do not note punctuality problems,[10] but such evidence fails to cast doubt on Defendants' contention that Rouse had accrued more "latenesses" than the successful candidates during or near the period in which he sought a promotion.  Rouse's evidence also fails to establish that Defendants' reliance on his punctuality was pretextual.

Similarly, Rouse's own testimony corroborates the accuracy of Defendants' explanation that Rouse was "argumentative" and that the successful candidates displayed greater professionalism than did Rouse.  Rouse referred to the interview at which McLaughlin was present as the one "where I was grunting" and acknowledged that he lost "all of [his] decorum."  Rouse Tr. 124.  Rouse also does not dispute that he tried to prove Bixby wrong about a technical issue but rather proffers his own characterization of the incident:  "I am passionate about electrical work and believe that Defendants now attempt to use that passion to paint me as argumentative." Rouse Decl. ¶ 18.  Absent some other showing of discriminatory motive, Defendants' subjective impressions of Rouse from an interview are alone valid justification for not awarding the position to Rouse even though he was otherwise qualified.  *Hurd v. New York Health & Hospitals Corp.*, 04 Civ. 998 (PAC), 2007 WL 678403, 4 (S.D.N.Y. Mar. 5, 2007) *aff'd* 2008 WL 5120624 (2d Cir. 2008); *Gavigan v. Clarkstown Cent. Sch. Dist.,* 84 F.Supp.2d 540, 548 (S.D.N.Y. 2000).

Third, the evidence submitted by Rouse concerning his qualifications relative to those of the successful candidates is insufficient to create a triable issue of fact as to whether racial discrimination motivated the DOC's hiring decisions.  "'[T]he court must respect the employer's unfettered discretion to choose among qualified candidates.'" *Byrnie*, 243 F.3d at 103 (quoting *Fischbach v. D.C. Dep't of Corr.,* 86 F.3d 1180, 1183 (D.C.Cir. 1996)).  "Where an employer's explanation, offered in clear and specific terms, 'is reasonably attributable to an honest even though partially subjective evaluation of . . . qualifications, no inference of discrimination can be drawn.'" *Id.* at 105 (quoting *Lieberman v. Gant,* 630 F.2d 60, 67 (2d Cir. 1980).  Rather, to prevent summary judgment on this basis must have "credentials ... so superior ... that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Id.* (quoting *Deines v. Tex. Dep't of Protective*

---

[10] On close examination, the annual performance reviews may even corroborate that Rouse had punctuality problems during the relevant 2005-06 time period. Whereas, his review for the period between July 2005 and July 2006 states "Mr. Rouse comes to work daily," his review for the next year states that he "comes to work *on time* daily." Rouse Decl. ¶¶ 29, 30, Ex. 1 (emphasis added).

14

*& Regulatory Servs.,* 164 F.3d 277, 280-81 (5th Cir.1999).  Here, although Rouse had more years of experience than some of the successful candidates and answered more technical questions correctly than others, there is not such a striking disparity in the qualifications that no reasonable person could have selected any one of the successful candidates over Rouse. *Byrnie,* 243 F.3d at 103; *see also Timothy v. Our Lady of Mercy Medical Center*, 233 Fed.Appx. 17, 21, 2007 WL 1120344, *3 (2d Cir. 2007).  With "no hint as to any racial reason" for the DOC's selection of these equally qualified candidates other than the simple fact that Rouse is black and they are not, attributing the promotion decision to racial discrimination based on the discrepancies in their qualifications "would be based entirely on speculation, not on logic. *Bickerstaff*, 196 F. 3d at 452.

Fourth, Rouse submits no evidence that suggests that Bixby, McLaughlin, or any other DOC employee responsible for personnel decisions harbored racial animosity towards him.  Indeed, Bixby twice recommended Rouse for promotion.  Although Rouse testifies that McLaughlin made an insensitive remark at one of Rouse's interviews, no facts support an inference that the comment was racially motivated.  In *Bickerstaff*, the Second Circuit considered the alleged statements of the chair of the university committee responsible for reviewing the plaintiff's promotion who allegedly said it would be a "crime" and a "disgrace" if the plaintiff received the promotion.   Unlike McLaughlin's remark about Rouse's deceased sister, there the comments were directly linked to the promotion at issue, but the Second Circuit found the committee chair's remarks insufficient to create a triable issue of fact because there was "no hint as to any racial reason" for the committee chair's opposition. *Bickerstaff*, 196 F.3d 452.  Because Rouse fails to set out facts from which a reasonable jury could infer that he was denied the promotions on the basis of his race, Defendants' motion for summary judgment on Rouse's racial discrimination claims under Title VII and the CHRL is GRANTED.

    b. <u>Age Discrimination</u>

This leaves Rouse's claim of age discrimination in violation of the ADEA and the CHRL and Bixby's admission, before the ALJ, that he hired Gonzalez in part because he was "young and energetic."  Such an admission is admissible evidence in this Court, *see* Fed. R. Evid. 801(d) (admission by party opponent); *Solimino*, 501 U.S. at 114, and evidence from which a reasonable jury could infer that Rouse was denied the October 2005 Position on account of his age.  Subject to statutory limitations on recoverable damages and the bar on double-recovery, there is a

genuine issue of material fact as to whether the Defendants failed to promote Rouse to the October 2005 Position on account of impermissible age discrimination.

Rouse cannot sustain age discrimination claims related to the DOC's failure to promote him in either May 2005 or September 2006 because there is no evidence that age played a role in either hiring decision and, indeed, Rouse was recommended for the September 2006 Position. Consequently, Defendants' motion for summary judgment on Rouse's age discrimination claims relative to the failure to promote him to the October 2005 Position is DENIED and their motion relative to the other two positions is GRANTED.

D.  **Retaliation**

Rouse also contends that Defendants violated Title VII by retaliating against him for filing a charge with the SDHR on December 5, 2005. Am Compl. ¶¶ 34-39; Rouse Tr. 237-238. These claims are also analyzed under the McDonnell Douglas burden shifting framework. *Terry*, 336 F.3d at 141. To establish a *prima facie* case of retaliation, Rouse must show that (1) that he participated in a protected activity; (2) that his employer had knowledge of such activity; (3) that he suffered a materially adverse action; and (4) that there is there is a causal connection between the protected activity and the materially adverse action. *See Thomas v. iStar Financial, Inc.*, 438 F.Supp.2d 348, 364 (S.D.N.Y. 2006) (citing *Burlington Northern & Santa Fe Railroad v. White*, 548 U.S. 53 (2006)). The Supreme Court has defined a "materially adverse action" as one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 57.

The first and second elements of a *prima facie* claim are not disputed: filing the SDHR complaint is a protected activity of which it must be presumed that the defendant had knowledge. It is on the third and fourth elements that Rouse's claim falters. Only acts that post-date a protected activity can be plausibly considered as retaliation for engaging in that activity. *See, e.g.*, *Ebanks v. New York City Dep't of Envtl. Prot.*, No. 05 Civ. 3172 (RRM), 2009 WL 891796, *7 (E.D.N.Y. Mar. 31, 2009). Here, the two acts of alleged retaliation that post-date Rouse's December 2005 filing of the SHDR complaint are (1) the Defendants' failure to promote Rouse to the September 2006 Position, and (2) Captain Croom's alleged public reprimand of Rouse in front of other employees.[11]

---

[11] In his Amended Complaint, ¶ 24, Rouse also alleges the following acts of retaliation, each of which pre-date the filing of SHDR complaint: (i) interference with Rouse's effort to obtain a certificate of fitness to maintain fire alarms (Rouse filed a written request a for authorization to obtain such certificate in

16

Although failure to promote generally constitutes a "materially adverse action," *see, e.g., Hinton v. City College of New York*, No. 05 Civ. 8591 (GEL) 2008 WL 591802, 27 (S.D.N.Y. Feb. 29, 2008), here Defendants' failure to promote Rouse to the September 2006 Position cannot form the basis of a retaliation claim.  The first shortcoming concerns causation:  the ten month period between the December 2005 filing and Defendants failure to hire him for the September 2006 Position stretches the bounds of the time frame that courts have allowed to support an inference of causation based on temporal proximity. *See Mugavero v. Arms Acres, Inc.,* No. 03 Civ. 05724(PGG), 2009 WL 890063, *12 (S.D.N.Y. Mar. 31, 2009) (surveying cases and noting "three month gap is on the borderline of what courts in this Circuit have typically found sufficient" to establish a prima facie case of retaliation).  Moreover, where the plaintiff relies solely on temporal proximity to establish a prima facie case of retaliation, court's require an even closer temporal link between the protected activity and the allegedly retaliatory act. *Hunter v. St. Francis Hosp.*, 281 F.Supp.2d 534, 547 (E.D.N.Y. 2003) (citing *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).  But perhaps more importantly, the causal link between the protected activity and the allegedly retaliatory denial of the promotion is undermined by the fact that Bixby *recommended* Rouse for the position.   Consequently, this leaves Bixby's failure to state that Rouse had "professional mannerisms" and the DOC's ultimate decision to award the position to the two other candidates who were also recommended.  But even if Rouse succeeds in establishing a *prima facie* case, as discussed above the Defendants have offered legitimate non-retaliatory reasons for selecting the other candidates and failing to state that Rouse had "professional mannerisms."   Rouse's evidence fails to rebut these legitimate non-retaliatory explanations.

Turning next to the "counseling" Rouse received in front of his coworkers, it is true that a reprimand or disciplinary action may, in some contexts, constitute the type of "materially adverse action" upon which a retaliation claims may be premised after *Burlington Northern*.

---

September 2005 after being told that the SSD's position was that they were "not required to assist in personal advancement," Stein Decl. Ex. JJ); (ii) failing to place Rouse on the pension plan (Rouse turned down the plan six to eight months after he was hired at the DOC in 1995, Rouse Tr. 279-81); (iii) denying him vacation days (Rouse testified at his declaration this occurred in 1998, Rouse Tr. 242); (iv) forcing him to undergo a toxicology test (Rouse supplies no further allegations or evidence as to when the alleged toxicology test took place); (v) failing to pay overtime (Rouse acknowledged since 2004 he has been satisfied with the manner in which overtime is distributed, Rouse Tr. 163).  Rouse also cites as retaliatory acts Defendants transferring him to work in the jails and failing to respond to his requests for transfers, but Rouse was transferred to away from the Support Services Division in connection with his 2007 promotion which cannot be considered a materially adverse action.  Defs. 56.1 Stmt. ¶26.

17

*See, e.g.*, *Meder v. City of New York,* No. 06 Civ 504, 2007 WL 2937362, *4, 11 (E.D.N.Y. Oct. 9, 2007). However, Rouse does not contend that either the counseling session itself—meant to address Rouse's attendance record—or the resulting disciplinary action had a retaliatory motive.[12] Rather, the only retaliatory act alleged is the Defendants' decision to counsel Rouse publicly, instead of privately. And the only adverse consequences Rouse alleges to have suffered are that he was embarrassed and that his privacy rights were violated.[13] But Title VII's retaliation provision does not immunize an employee from "petty slights, minor annoyances, and simple lack of good manners." *Burlington Northern*, 548 U.S. at 68. When the true act of alleged retaliation is laid bare and with no suggestion of retaliatory motive other than the temporal proximity between the protected act and the encounter in the locker-room, Croom's reprimand of Rouse in front of his co-workers and even the suggestion he might be disciplined for his poor attendance, are simply not the type of conduct to which the Supreme Court referred when articulating its belief in the importance of separating "significant from trivial harms." *Id.* In the context of both its topic and its location the locker-room reprimand does not meet the materiality threshold of the type of conduct upon which a claim of retaliation may be premised. *See Stoddard v. Eastman Kodak Co.,* 2009 WL 367553, at *3 (2d Cir. Feb. 13, 2009) (stating it was "very unlikely" that plaintiff could show that having been "subjected to closer scrutiny" was the kind of adverse employment action required to establish a *prima facie* case of retaliation); *Spector v. Board of Trustees of Community Tech Colleges*, 2009 WL 693353, 2 (2d Cir. 2009) (district court did not err in holding that pattern of alleged harassment consisting of, *inter alia*, unfulfilled threats of disciplinary action, rumors, accusations of misconduct, and notices "reminding" plaintiff of the availability of mental health counseling did not rise to level of materially adverse actions). Accordingly, Defendants' motion for summary judgment with respect to Rouse's retaliation claims is GRANTED.

---

[12] Although he disputes that he spoke to either Crooms or Bixby in a disrespectful manner, Rouse acknowledges that he accepted the disciplinary actions—loss of vacation days—without a hearing. The disciplinary report of the incident states that while being counseled by Crooms and Bixby about his attendance record, Rouse began speaking about issues unrelated to that topic of the counseling, namely, a day of work that was owed to him. When Bixby informed Rouse that those issues were unrelated to the subject of the counseling, "Mr. Rouse stated to Mr. Bixby in a disrespectful manner in the presence of Mr. Bixby's subordinates, "I'm not speaking to you." Stein Decl. Exs. C, D.

[13] Although invasions of an employee's legitimate privacy rights are not to be taken lightly, a reprimand from a supervisor concerning an employee's attendance record does not implicate such rights because simply as a matter of common sense an employee's attendance record cannot be considered confidential vis a vis his coworkers.

### E. Privacy Act Claims

Rouse's claim under the Privacy Act fails as a matter of law because the Second Circuit, along with several others, has held that "the private right of civil action created by the Privacy Act is specifically limited to actions against agencies of the United States government" not state or local entities. *Burch v. Pioneer Credit Recovery, Inc.* 551 F.3d 122, 124 (2d Cir. 2008) (per curiam) (citing *Pennyfeather v. Tessler,* 431 F.3d 54, 56 (2d Cir. 2005). Consequently, Defendants' motion for summary judgment on this claim is GRANTED.

### F. Whistle-Blower Claims under New York Labor Law §740

Rouse does not oppose Defendants' motion with respect to his claim under New York Labor Law §740, the so-called whistle-blower statute, which prohibits retaliation against employees who disclose to a supervisor or a public agency an employer's violation of law. Section 740 does not, however, apply to public employers such as the Defendants. *See Tamayo v. City of New York*, No. 02 Civ. 8030 (HB), 2004 WL 137198, *7 (S.D.N.Y. 2004) (citing *Markovic v. New York City Sch. Constr. Auth.,* No. 99 Civ. 10339 (AGS), 2002 WL 22043, *4 (S.D.N.Y. 2002). Accordingly, Defendants' motion for summary judgment on this claim is GRANTED.

### G. Intentional Infliction of Emotional Distress

Rouse's tort claim of IIED also fails as a matter of law. Rouse makes no attempt to oppose Defendants' motion for summary judgment on this claim and none of the conduct alleged in the Amended Complaint or revealed by the record before me, is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993). Although certain DOC employees may have directed impolite remarks at Rouse, such remarks do not constitute the type outrageous conduct required to state a claim of IIED. Furthermore, Rouse cannot assert a claim of IIED against Defendants because he failed to make such allegation in his notice of claim. *See Bayer v. City of New York*, 875 N.Y.S.2d 209, 210 (2d Dep't 2009); Stein Decl. Ex. II. Accordingly, Defendants' motion for summary judgment on Rouse's IIED claim is GRANTED.

### CONCLUSION

While the Court is here and ready to adjudicate valid claims, the sort of shotgun approach utilized by this Plaintiff seems unhelpful. Worse yet, a modicum more research may have saved time for all concerned. For the foregoing reasons, Defendants' motion for summary judgment is

GRANTED with respect to all claims, except Rouse's claims of age discrimination in violation of the ADEA and CHRL. With respect to these claims Defendants' motion is DENIED. The parties are directed to prepare for trial on the age-discrimination claims, which will commence on June 22, 2009. The potential damages available to Rouse will be circumscribed: back-pay damages will be reduced by the amount of back-pay Rouse already recovered in the SDHR proceeding, punitive damages are unavailable, and under the ADEA, Rouse will only be entitled to "liquidated damages" in an amount equal to his back-pay if he proves that Defendants' violation of the ADEA was willful.

**SO ORDERED**
New York, New York
June ___, 2009

_____
U.S.D.J.